CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA A. BOERSCH (CABN 126569)
Chief, Criminal Division

DANIEL N. KASSABIAN (CABN 215249)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone:    (415) 436-7034
    Facsimile:    (415) 436-7234
    daniel.kassabian@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:25-CR-00259-WHO |
| Plaintiff, | MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION FOR DEFENDANT TANG |
| v. | |
| ZIJIAN TANG, | |
| Defendant. | |

## I.    SYNOPSIS

On August 28, 2025, defendant Zijian Tang evaded arrest by jumping out a window on the second floor of his family home—abandoning his wife and young child—when federal agents knocked on their front door to execute an arrest warrant and search warrant for him. He has remained a fugitive since. A month later, he finally decided to come to court to face the charges. The Court must now determine whether a detention hearing is warranted because there is a "a serious risk that such person [i.e., the defendant] will flee" (again). 18 U.S.C. § 3142(f)(2)(B). And if it holds a hearing, the Court must determine further whether defendant Tang should be detained because there are "no condition or combination of conditions will reasonably assure the appearance of the person [i.e., the defendant] as required and the safety of any other person and the community." *Id*. § 3142(e)(1).

U.S. MEMO ISO PRETRIAL DETENTION                 1
3:25-CR-00259-WHO

The government submits that defendant Tang's conduct when facing arrest, in combination with other relevant considerations, shows he's a serious flight risk and warrants a detention hearing pursuant to 18 U.S.C. § 3142(f)(2)(B). His recent fit of conscience—or maybe just growing weary of being on the lamb away from his family—is insufficient to counter the totality of circumstances that warrant such a hearing. As to whether to detain defendant Tang, while he may demonstrate that he has community ties by being in the United States for several years, that must be juxtaposed with his severing those ties to avoid law enforcement. Rhetorically, what assurance does the Court that if/when defendant Tang faces a guilty verdict or sentencing that he won't flee then, given his predilection to flee when facing custody? For the reasons herein, the Court should detain defendant Tang's pretrial.

## II.   LEGAL STANDARDS

### A.   Whether The Court Should Hold A Detention Hearing

Defendant Tang does not face any charges that enable the government's right to a detention hearing pursuant to 18 U.S.C. § 3142(f)(1). Thus, the government moves for such a hearing pursuant to 18 U.S.C. § 3142(f)(2)(A) because there is a serious risk that defendant Tang will flee (again).

Some courts, including in this district, have suggested a low threshold in triggering a detention hearing. "Because of the immediacy with which the hearing should happen, the government or Court need only express their belief that the defendant poses a serious risk of flight for the hearing to commence." *United States v. White*, No. CR 18-25, 2018 WL 5291989, at *4 (N.D. Cal. Oct. 19, 2018) (Westmore, J.) (following *United States v. Powers*, 318 F. Supp. 2d 339, 341 (W.D. Va. 2004)). More recently, yet another court in this district acknowledged that low threshold in holding:

> Here, the government did more than express its belief, and it did not overplay the issues about possible flight risk: . . . [it provided] a fuller description of erratic and concerning behavior in this and other districts . . . that gave rise to a substantial concern about volatility, amenability to supervision, and a resulting concern about a serious risk of flight. That gets the government its detention hearing under 18 U.S.C. § 3142(f)(2) based on a serious risk of flight. The court's view — also expressed in some of the Tenderloin fentanyl cases — is that the inquiry into whether a defendant poses a serious risk of flight cannot be divorced from the context of the defendant's behavior.

*United States v. Nguyen*, No. 24-MJ-71474-MAG-1 (LB), 2024 WL 4584574, at *7 (N.D. Cal. Oct. 25, 2024) (Beeler, J.). This is consistent with the mere nature of the charge being sufficient to warrant a

detention hearing pursuant to § 3142(f)(1), where such a charge is based on a probable cause determination by a grand jury or court officer. *Compare United States v. Singleton*, 182 F.3d 7, 12 (D.C. Cir. 1999) ("The decision whether to hold a [detention] hearing occurs based on even less information than a decision to detain or release: a detention order is based on a hearing, while an order to hold a hearing is based on a proffer of what the hearing might establish.")

More recent authority by other district courts in the Ninth Circuit have held otherwise, however, finding that:

> The Government must demonstrate serious risk of flight by a preponderance of the evidence to trigger a detention hearing under § 3142(f)(2)(A).  [citations omitted]  More finely put, this means that the Government must demonstrate that it is more likely than not that there is a serious *risk* that the defendant will flee, not that it is more likely than not that the defendant *will* flee.

*United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1138 (D. Idaho 2023); *accord United States v. Erazo-Calix*, No. 1:24-CR-00150-AKB, 2024 WL 4505038, at *3 (D. Idaho Oct. 16, 2024) ("This Court, however, declines to disturb the *Figueroa-Alvarez* analysis [that] identifies the appropriate standard for determining a risk of flight as a preponderance of the evidence."); *United States v. Spirea*, No. 3:24-CR-00383-2-AN, 2024 WL 4903759, at *4 (D. Or. Nov. 27, 2024) (adopting analysis in *Figueroa-Alvarez*).

Those more recent cases, following the reasoning of *Figueroa-Alvarez*, have also delineated the factors a court may consider in determining whether the defendant presented a serious *risk* of flight pursuant to 18 U.S.C. § 3142(f)(2)(B) to warrant a detention hearing. After distinguishing risk of flight from risk of non-appearance, the court in *Figueroa-Alvarez* analyzed four categorical factors that "relate to serious risk of flight," and then delineated the types of information within each factor that it evaluated in that specific case as the related to the alien defendant in that case:

    (i)    incentives to flee, including weight of the evidence and potential punishment;

    (ii)   ability to flee – i.e., defendant's access to resources that would enable flight;

    (iii)  ties to the jurisdiction and the United States, including length of residence, family ties; and

    (iv)  reliability and trustworthiness of the defendant, including any illegal reentry after

removal, prior violations of terms of supervised release/probation/parole, prior failures to appear, and substance abuse.

See *Figueroa-Alvarez*, 681 F. Supp. 3d at 1136-45.  The court considered "these factors as part of the 'totality of the evidence.' [citation].  No one factor is dispositive." *Id*. at 1136 (quoting *United States v. Santos-Flores*, 794 F.3d 1088, 1092 (9th Cir. 2015)).

## B.   Whether The Court Should Detain The Defendant After A Hearing

The Bail Reform Act permits pretrial detention of a defendant where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence.  *Id*.  A finding that a defendant is a danger to the community must be supported by clear and convincing evidence.  18 U.S.C. § 3142(f)(2)(B).  "[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).  Categorical grants or denials of bail, not tethered to an individualized determination, are impermissible.  *Id*.  Consideration of factors outside those articulated in section 3142 is also disfavored.  *Id*.

Ultimately, the four factors to determine whether to detain pretrial are:  (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community by the defendant's release.  18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## II.   THE DEFENDANT PRESENTS A SERIOUS RISK OF FLIGHT

The government is entitled to a detention hearing for defendant Tang given the totality of circumstances as discussed below, with defendant Tang's evading arrest for this case for over a month

as placing this issue beyond reasonable dispute.

### A.     Incentives To Flee: Weight Of The Evidence And Potential Punishment

The Indictment articulates defendant Tang's involvement in a sophisticated scheme using counterfeits to defraud a national retailer through organized retail theft. Under the scheme, the defendants purchased iPad tablets and AirPods earphones from that retailer with stores throughout the San Francisco Bay Area and elsewhere. The defendants then returned to that same retailer counterfeit versions bearing the brand name's trademarks, and serial numbers that matched the iPad tablets and AirPods earphones previously purchased from that retailer, to obtain the original purchase value back. The counterfeits were returned in the purchased, genuine iPad tablets' and AirPods earphones' original packaging that also bore the brand name's trademarks and the genuine products' serial numbers. In many instances, the original packaging was resealed with imitation stickers that matched the original sealing stickers to make the return appear unopened. The defendants imported the counterfeits and the imitation sealing stickers from China. The defendants also then exported the genuine iPad tablets and AirPods earphones to China.

#### 1.     Evidence Of Defendant Tang's Participation In The Charged Crimes

Defendant Tang was observed returning counterfeit products multiple times to the retailer's stores in California, including as specified in the Indictment in Counts 10 and 11. Some of the inbound shipments using an international carrier from China with counterfeit goods, as determined during customs inspections at the Oakland International Airport before being released, listed defendant Tang as the recipient. Defendant Tang also was observed picking up such parcels from the international carrier's offices. Additional evidence was obtained during a search warrant executed at his home, despite defendant Tang's attempt to destroy some of it, as described in Part D.3 below.

#### 2.     Potential Punishment

If convicted, defendant Tang faces a maximum statutory sentence of 20 years in prison and a $250,000 fine for each count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349 and mail fraud in violation of 18 U.S.C. § 1341, and 10 years in prison and a $2,000,000 fine for each count of conspiracy to traffic in counterfeit goods in violation of 18 U.S.C. § 2320(a) and trafficking in counterfeit goods in violation of 18 U.S.C. § 2320(a)(1). The government estimates defendant Tang's

guidelines range to be 33-41 months imprisonment based on a total offense level of 19 (including a 3-level reduction for acceptance of responsibility) and a Criminal History Category of II.

### B. Ability To Flee: Access To Resources That Would Enable Flight

Defendant Tang appears to have recent ties to his country of birth, China. For example, Defendant Tang left from the United States for China on July 20, 2024. After being in China for approximately 6 months, Defendant Tang returned on November 14, 2024 by a flight to Tijuana, Mexico, and from there he then crossed the southern pedestrian border into the United States an hour later. At his entry into the United States, defendant Tang lied to the Customs and Border Patrol officer by stating he was returning after having just travelled to Mexico from Southern California on a daytrip.

### C. Ties To The Jurisdiction And The United States

Defendant Tang is now a naturalized United States citizen and has a wife and young child with whom he resides in San Lorenzo in this district. These considerable ties to this jurisdiction and the United States in general, however, appear to have little impact on defendant Tang given his absence for 6 months around a year ago, and his conduct as described below that resulted in several custodial periods following arrests for evading court process.

### D. Reliability And Trustworthiness Of The Defendant

Several instances where defendant Tang has disregarded his obligations to the court—including evading his arrest in this very case—show he is not reliable or trustworthy as to following court orders.

#### 1. Flight While On Pretrial Release

Defendant Tang absconded from a recent state court criminal case, in California Superior Court, San Mateo County, no. 21-SF-005197-A, until he was apprehended and pleaded guilty. Per the docket for that case, he was held to answer on felony drug sales charges on September 8, 2022, and then appeared in Court approximately eight times through 2022 and 2023 for pretrial conferences and motion practice. But he then failed to appear on November 13, 2023, and a bench warrant for his arrest was issued. Per his criminal history and the court's docket, defendant Tang was apprehended January 30, 2024—i.e., 2½ month later—when arrested by the Freemont Police Department for drug sales. He then and remained in custody, while seeking trial on a time-not-waived bases, during that court's proceedings thereafter until he pleaded guilty to the charges on March 22, 2024, after about 1½ months in custody.

### 2.     Violating And Flight While On Probation

Defendant Tang violated his probation resulting in revocation, <u>in addition to</u> engaging in the above-described offense conduct charged in the instant case while on probation.  On March 22, 2024, he was convicted in California Superior Court, San Mateo County, no. 21-SF-005197-A, on state drug sales charges— Cal. Health & Safety Code §§ 11378 and 11379.2, both felonies for possession of controlled substances for sale—and sentenced to 120 days in county jail and 2 years formal probation.  Per his criminal history and that Court's records, an arrest warrant was issued for violating his probation and defendant Tang was apprehended on June 9, 2025—when arrested by the Fremont Police Department (again)—this time possibly for failing to surrender to serve the remainder of his county jail time.  He then remained in custody until July 23, 2025, at which time he admitted his probation violations and was released to complete his extended probation term.

### 3.     Flight From Arrest In This Case

Defendant Tang fled from federal law enforcement to evade arrest for this case, and remained a fugitive by evading law enforcement searching for him for over a month.  On August 28, 2025—i.e., just over a month after being released from custody and while still on state court felony probation—federal agents executed an arrest and search warrant by going to defendant Tang's home in San Leandro.  When agents gave knock notice, they observed defendant Tang climb out a second story window and jump down to the roof of a carport immediately below!  He then fled toward the backyard, where agents pursued him.  Agents then observed defendant Tang jump over a fence into the neighbor's yard, and from there he managed to evade arrest.  A subsequent search by federal agents of defendant Tang's home—where he had abandoned his wife and young child—revealed evidence of the offense conduct, including five brand new, genuine Apple iPad Pro tablets, five counterfeit sealing stickers for Apple products, and paper receipts—from the retail store that is the victim of the offense conduct—stuck in the toilet bowl in an apparent attempt to flush that evidence down the toilet!  Thereafter, federal agents were proactive in trying to locate defendant Tang to no avail.  This included placing surveillance vehicles at his home and other locations he had been known to frequent.  It appears defendant Tang did not return home since he has fled, and has maintained a low profile to avoid law enforcement contact.

Last Friday, the government was contacted by an attorney that defendant Tang was retaining to

represent him. The government placed the matter on calendar for defendant Tang to appear in court, reserving all rights to seek defendant Tang's detention should he appear.

### IV.  THE SECTION 3142(G) FACTORS WEIGH IN FAVOR OF DETENTION

The government has made a showing that defendant Tang should be detained. While he has ties to the community, they do not overcome the other factors in favor of detention based on the information before the Court at this time. Evidence of his guilt and likely period of federal imprisonment "makes it more likely that he will flee. . . ." *United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (affirming district court finding government met burden of showing flight risk and danger to the community in motion for pretrial detention pending re-trial where defendant faced lengthy period of incarceration). Paramount is defendant Tang's recent history of flight from his state court case and this one—his past conduct demonstrates his risk of flight by a preponderance of evidence.

Defense will argue that defendant Tang is not a flight risk because he decided to appear in court to face these charges. But that was only after a month of evading law enforcement. And he has a history of not showing up in a prior court case as it approached trial, and when he had to serve custody time—only to be hauled back to court in handcuffs to meet his obligations. There is no reason for this Court to believe he will continue to follow pretrial orders for the entirety of this case, through its conclusion if it reaches trial, conviction, or surrender, if/when those dates come to pass.

### V.  CONCLUSION

For the foregoing reasons, the Court should detain defendant Tang pending trial, or at least have a full detention hearing to determine additional facts that defense might present in rebuttal.

DATED: October 6, 2025                                     Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

_/s/_
DANIEL N. KASSABIAN
Assistant United States Attorney